**Joseph CARIONE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 03–CV–4024(DRH)(MLO).

United States District Court, E.D. New York.

March 17, 2005.

Kase & Druker, Garden City, New York, By: James O. Druker, Esq., United

States Department of Justice—Tax Division, Attorneys for Plaintiff.

Alan M. Shapiro, Esq., United States Attorney's Office—Eastern District of New York, Islip, New York, By: Kevin P. Mulry, Esq., Attorneys for Defendant.

## MEMORANDUM & ORDER

HURLEY, District Judge.

### INTRODUCTION

Plaintiff Joseph Carione filed the present action against the United States, seeking a refund of income tax that he claims to have paid erroneously. The issue in this case is whether the proceeds of an S Corporation's sale of its business assets, held in escrow and then directly transferred to the Government to satisfy an outstanding forfeiture judgment, can constitute taxable income to that corporation's shareholder—and if so, when. Carione argues that such proceeds were never taxable. The United States argues that they were properly taxed in the year of the sale. Both sides have moved for summary judgment. For the reasons that follow, both motions are granted in part and denied in part.

### BACKGROUND

During the 1990's, Carione owned and was the president and chief operating officer of Grand Carting, Inc. ("Grand Carting"), a commercial trash-hauling business. Grand Carting was organized as an "S Corporation" under New York law, pursuant to 26 U.S.C. §§ 1362 and 1366. It operated out of a building in West Babylon, New York owned by "Carione Realty," which in turn was co-owned by Carione and other members of his family.

In 1996, the United States indicted several garbage removal services and their owners, including Dennis Hickey, certain entities owned by Hickey, Carione, and Grand Carting, for money laundering, money laundering conspiracy and other crimes under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. See generally United States v. Hickey, et al., 96–CR–693. The Government's indictment sought "RICO Forfeiture," noting that as a result of their racketeering and racketeering conspiracy activities, the defendants had "interests which they acquired or maintained in violation of [RICO], which interests are subject to forfeiture to the United States of America pursuant to [18 U.S.C. § 1963(a)(1) ]." These assets included all of Grand Carting's property and the West Babylon premises; in order to ensure the preservation of these assets pending forfeiture, the Government also sought a restraining order.[1]

On September 10, 1996, this Court issued an "Ex–Parte Post–Indictment Restraining Order," which (1) restrained the alienation, encumberance, concealment or sale of Grand Carting's property and assets other than in the ordinary course of business, (2) restrained Carione and his relatives from in any way alienating, encumbering, concealing or selling the property and assets of Grand Carting other than in the ordinary course of business, and (3) appointed the United States Marshals Service to "monitor" Grand Carting

---

1. Carione insists that the forfeiture pertained to, and the assets forfeited were, only instrumentalities of the offenses in that case, not the "fruits" of any such offenses. Carione apparently makes this argument in light of the rule established in cases like Wood v. U.S., 863 F.2d 417, 419–20 (5th Cir.1989), that criminals who have paid income tax on ill-gotten gains are not entitled to subsequent refunds when they make restitution to their victims. Nothing in the Hickey record indicates that a distinction was ever drawn between the "instrumentalities" and the "fruits" of Carione's offenses—and in any event, such a distinction is irrelevant to a determination of the issues in the present case.

and ensure that its assets "[we]re not sold, dissipated or wasted during the pendency of th[e] restraining order." The Marshals were authorized to review and inspect all document relating to Grand Carting's operations, enter the premises and observe its operations, interview employees, and petition the Court if access to any of the aforementioned was denied; but Carione continued to operate the business in essentially the same manner as before the injunction was issued.[2]

During the pendency of this restraining order and the criminal proceeding, Grand Carting lost a large account and suffered substantially reduced revenue. Carione, eager to sell the business, approached "Waste Management, Inc." or "WM of New York" ("WM"), an international waste disposal company, to negotiate the sale of Grand Carting (or the entirety of its assets). Carione alone negotiated the sale with WM, without the presence or participation of any governmental representative, and the two parties reached a tentative sale agreement.

The United States had the right to object to the contract, but did not, on the condition that the proceeds were to be placed in escrow and available to satisfy an eventual judgment of forfeiture. The agreement also required the approval of the District Court. On March 30, 1998, this Court approved the sale of Grand Carting, and ordered that the proceeds be deposited in an escrow account with the Clerk of Court, to be withdrawn only upon further order of the Court and ten days advance notice to the Government. The sale occurred on May 5, 1998; WM paid $548,309 for Grand Carting's assets, and as ordered, all proceeds were deposited in the escrow account with the Court.

On February 12, 1999, the Court endorsed a "Consent Order of Forfeiture" pertaining to, and signed by, all of the *Hickey* defendants (including Carione and Grand Carting) in conjunction with their plea agreements. The Defendants agreed that they were jointly and severally liable to the United States for a total of $6,900,721.00, to be paid no later than July 1, 2000. The Consent Order provided that payments were initially to derive from certain properties owned by Hickey and his family, and certain properties and businesses other than Grand Carting, but it added: "In the event that the Forfeiture Judgment is not fully paid by July 1, 2000, the government may in its sole discretion sell, and/or forfeit and sell, all property restrained in this matter, including the proceeds of the sale of Grand Carting, Inc., which shall be held in escrow until the Forfeiture Judgment is satisfied, or until July 1, 2000, whichever is earlier." Pursuant to this clause, on August 9, 2000 the Court ordered the proceeds of the sale of Grand Carting transferred to the "Asset Forfeiture Fund" for settlement of the Forfeiture Order, after sales of property by Hickey failed to satisfy the full forfeiture amount.

In October 1999, Carione filed a "Form 1040" individual tax return for the 1998 tax year, and reported capital gain from the sale of Grand Carting as income. In September 2000, Carione paid his 1998 taxes, including $49,400 in taxes on the Grand Carting sale. Carione then filed an amended tax return for 1998 in November 2000, claiming that he had "incorrectly included a capital gain from the sale of [Grand Carting], whereas in fact, this corporation was not sold in 1998. The taxable event, if any, should occur in the year

---

**2.** The parties dispute whether the Marshals' interactions with Grand Carting following issuance of the above order constituted merely "monitoring" or actual "supervision." As explained in the Discussion section, *infra,* this distinction is irrelevant for purposes of this decision.

2000." There was apparently no response from the Internal Revenue Service.

In December 2000 Carione moved "for an order, directing the government to reimburse [him] for the sum of $48,482.00, representing capital gains taxes erroneously paid." This Court denied the motion, holding that "[t]o the extent Carione 'mistakenly paid' taxes to the Internal Revenue Service, it would seem that he should seek to recover those monies from that entity." Carione subsequently filed Civil Action 01–3936 against the United States pursuant to 26 U.S.C. § 7422, seeking a refund of the aforementioned tax assessment "because the gain from the sale of Grand Carting, Inc. was erroneously included in his income. Since the company and the proceeds were forfeited to the United States, Mr. Carione is not liable to pay taxes on the gain." On September 6, 2002, while cross-motions for summary judgment in that case were being briefed, Carione filed an "amended claim for a refund" with the Internal Revenue Service, based essentially on the rationale asserted in his complaint. Based on the "variance doctrine" (and the discrepancy between the basis for a refund in Carione's November 2000 amended tax return and the one asserted in his complaint), on August 27, 2003 this Court granted the Government's motion for summary judgment and dismissed the case for lack of subject matter jurisdiction.

While Civil Action 01–3936 was awaiting decision, Carione filed the present action pursuant in part to 26 U.S.C. § 6532(a)(1), stating that because more than six months had elapsed without an IRS decision since he filed the "amended claim for a refund" discussed in the preceding paragraph, the latter statute permitted the filing of an action on the same grounds. Carione subsequently moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the United States moved for

dismissal pursuant to Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

##### 1. Conversion of the Government's dismissal motion into one for summary judgment is appropriate.

The United States's motion is for dismissal pursuant to Rule 12(b)(6), or alternatively for summary judgment pursuant to Rule 56. A dismissal motion may be treated as one for summary judgment if all parties are "given reasonable opportunity to present all material made pertinent to such a motion." Fed.R.Civ.P. 12(b)(6).

The "essential inquiry" in determining whether to convert a motion to dismiss into one for summary judgment is "whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990) (internal quotations omitted). Where the movant has clearly stated that he moves in the alternative for summary judgment and where the non-movant responds to the motion by filing his own affidavit and specifically addressing the summary judgment argument in his memorandum of law in opposition, the non-movant has sufficient notice that the court might treat the motion as one for summary judgment. *See Robert v. Dep't of Justice*, No. 99 Civ. 3649, 2001 WL 34077473, at *1 n. 2 (E.D.N.Y. March 22, 2001) (citing *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir.1995); *Gurary v. Winehouse*, 190

F.3d 37, 43 (2d Cir.1999); and *In re G & A Books, Inc. v. Stern,* 770 F.2d 288, 295 (2d Cir.1985)). In the present case, the Government clearly notified Carione that its motion was for summary judgment in the alternative to dismissal, and both sides have furnished statements pursuant to Local Rule 56.1; the Court is thus satisfied that Carione was fully apprised of the potential that the Government's motion would be converted.

■ Federal courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings" offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; "[t]his discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, CIVIL § 1366 (3d ed.2004). In the present case, the materials furnished by both parties outside of the pleadings are clearly helpful. Accordingly, the Government's motion will be converted to one for summary judgment pursuant to Rule 56.

### 2. *Summary judgment: legal standards*

In deciding a summary judgment motion, the Court may properly consider the documents set forth in Rule 56(c), including pleadings, depositions, affidavits, answers to interrogatories, and admissions. Moreover, the Court may consider statements submitted pursuant to Rule 56.1 of the Local Civil Rules. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 72 (2d Cir.2001). The facts in the Background section, *supra,* were culled from those properly considered documents.

Summary judgment is appropriate when, drawing all factual inferences in favor of the party opposing summary judgment, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987); *and Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996).

■ When considering cross-motions for summary judgment, a court "need not enter a judgment for either party." *Padberg v. McGrath–McKechnie,* 203 F.Supp.2d 261, 274 (E.D.N.Y.2002). Rather, where both plaintiff and defendant move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981).

### B. *Tax collection challenges: legal standards*

■ Under 28 U.S.C. § 1346(a)(1), United States district courts have original jurisdiction over

[a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws.

In actions brought pursuant to this provision, a district courts generally reviews the determination and assessment of the en-

tire tax liability de novo, "plac[ing] itself in the shoes of the Commissioner." *R.E. Dietz Corp. v. U.S.,* 939 F.2d 1, 4 (2d Cir.1991) (internal quotations and citations omitted). The taxpayer bears the burden of proving that the assessment is erroneous. *U.S. v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

II. *The sale of Grand Carting's assets produced taxable income to Grand Carting, and thus to Carione, but only in August 2000, when such proceeds were released from escrow and used to satisfy the Plaintiff's prior forfeiture judgment.*

■ Both parties have moved for summary judgment on what is essentially the single overarching issue in this case: the proper tax treatment of the proceeds from Grand Carting's asset sale. Carione argues that "there was no taxable event as to him, either at the time the assets were sold in 1998 or at the time that the proceeds were remitted to the Government in the year 2000." According to Carione, "a person obtains gross income, upon which he is liable for taxes, [when] he obtains dominion and control over the income," and "[a] taxpayer has dominion and control over revenue when he is free to use it at will." According to Carione, pursuant to the forfeiture order in the *Hickey* case, he received no proceeds from the sale of Grand Carting, and "had no right to control the disposition of the proceeds at that time." The United States argues that when it occurred in 1998, the sale of Grand Carting produced taxable income to Grand Carting, and given the pass-through taxation provisions applicable to S Corporations, to Carione as well. The Government suggests that Grand Carting had sufficient "dominion and control" over the transaction for taxation purposes because it chose to sell assets to which it held title, knew that the proceeds of such sale would be placed in escrow for potential use in satisfying the forfeiture judgment, continued to operate during the underlying *Hickey* criminal proceedings, and remained in existence after the transaction with WM. Both sides have it partially right.

A. *Proceeds from a sale that are held in escrow and not under the control of the eventual recipient are not taxable to him as income.*

■ Courts have long held that it is the "realization" of income, and not merely an acquisition of a right to receive it in the future, that constitutes a taxable event. *See C.I.R. v. Fender Sales, Inc.,* 338 F.2d 924, 928 (9th Cir.1964). It is also a general rule of taxation that "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." *See* Treas. Reg. § 1.451-2(a). And it is well-established that "gross income" generally refers to assets over which the taxpayer can exercise "dominion and control." *Ianniello v. Comm'r,* 98 T.C. 165, 173, 1992 WL 31236 (1992) (internal citations omitted). Carione argues that under the particular circumstances of this case, he had no taxable "dominion and control" over such funds in question. He is correct, insofar as the sale proceeds remained in escrow.

■ Where a taxpayer's would-be income is deposited in an escrow account beyond that taxpayer's reach, it generally should not be included in his taxable income. *See, e.g., C.I.R. v. Indianapolis Power & Light Co.,* 493 U.S. 203, 211 n. 7, 110 S.Ct. 589, 107 L.Ed.2d 591 (1990) (acknowledging Commissioner's concession that security deposits held by power company "would not be taxable if they were placed in escrow"); *Ware v. C.I.R.,* 906 F.2d 62, 65 n. 2 (2d Cir.1990) (fee not actually or constructively received by firm for tax purposes so long as held in escrow beyond firm's control); *and Reed v.*

*Comm'r,* 723 F.2d 138, 149 (1st Cir.1983) (taxpayer not required to report income held in bona fide escrow for payment in later tax period and from which no other present beneficial interest is derived).

██ The United States argues, however, that "[t]he mere fact that the sale proceeds were paid into an escrow account that was held for the benefit of Grand Carting did not prevent ... Grand Carting ... from recognizing income from the sale in 1998." While this is a technically accurate generalization, it does not help the Government under the circumstances of this case. Naturally, a taxpayer may not simply create a self-styled "escrow" account and channel all of his income into it to avoid his tax liabilities. *See Reed v. Comm'r,* 723 F.2d at 143. Escrow arrangements have been found "ineffective to defer income tax" where the taxpayer "received some present, beneficial interest from the escrow account" or where "the escrow arrangement was the product of the taxpayer's self-imposed limitation on funds [that he] had an unqualified, vested right to control." *Id.* at 146 (internal citations omitted).

By contrast, the First Circuit and other courts have found the use of an escrow account sufficient to defer a recipient's realization of taxable income where it is (1) "part of a bona fide, arms-length agreement," whereby (2) the seller "receives no present beneficial interest (e.g., investment income) from the purchase funds while they are in escrow," and (3) "the escrowee is not acting under the exclusive authority of the taxpayer." *Id.* at 149. *See also Grannemann v. U.S.,* 649 F.Supp. 949, 957–58 (E.D.Mo.1986).³ These conditions

have clearly been met in the present case. The Government has not suggested that the Grand Carting/WM transaction was anything less than bona fide and arms-length (indeed, the Government had the opportunity to object to the sale, but did not, and this Court approved the sale). Nor has the Government alleged that Carione received any form of present benefit from the proceeds while they were in escrow. And the Government has not insinuated that the escrowee (the Clerk of Court) was acting under Carione's exclusive authority. In sum, under the First Circuit's standard, the escrow arrangement in this case was adequate to postpone any realization of taxable income by Grand Carting (and by implication, by Carione).

The Government suggests that the escrow account in this case did not shield Carione from realizing taxable income in 1998, because it was "for the economic benefit of Grand Carting in that at the end of the escrow period the funds would either be paid to it cash-in-hand or they would be used to satisfy one of its liabilities." This is a facially untenable argument, however. For surely the point of *every* escrow arrangement is for the recipient of the funds held in escrow to get paid or satisfy some liability in the end. Were the Government's reasoning applied, no escrow arrangement could ever be tax-deferring. Such a result clearly contradicts the outcomes of the cases cited above, and the Government cites no authority overriding their persuasiveness.

In sum, because Grand Carting's "asset purchase agreement" proceeds were placed in a bona fide escrow account (and

---

**3.** Although these cases involved private escrow arrangements between purchasers and sellers, there is no logical reason why the rule should not apply where the escrow arrangement is imposed or supervised by a third party, especially a governmental or judicial

entity. *Cf. Amoco Prod. Co. v. Newton Sheep Co.,* 85 F.3d 1464, 1467 (10th Cir.1996) (while deposited in escrow account with district court clerk, proceeds from oil and gas sales not taxable as income).

for the duration of their stay in that account), neither Grand Carting nor Carione realized taxable income.

B. *Grand Carting did receive a taxable economic benefit in 2000, when the proceeds of its asset sale were used to satisfy the outstanding criminal forfeiture order.*

Carione is correct in arguing that proceeds from the sale of a business or asset cannot be taxed as income when either deposited into an escrow account or kept there. But he fails in the next step of his argument. Carione asserts that he might have eventually realized income from the sale of these proceeds "[h]ad the funds ultimately been released to Mr. Carione," but they were instead paid to the U.S. Marshals to make up for the forfeiture fund's deficit. Carione suggests that because he never received or controlled any of the funds from the sale of Grand Carting, he realized no income from the sale, and there was no taxable event. This is erroneous; neither receipt nor control (nor the two combined) is a *sine qua non* of taxable "income."

The determination of what constitutes taxable income "begins with the basic premise that the purpose of Congress was to 'use the full measure of its taxing power.'" *James v. U.S.*, 366 U.S. 213, 218, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (quoting *Helvering v. Clifford*, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940)). Courts should construe "income" liberally, "in recognition of the intention of Congress to tax all gains except those specifically exempted." *Id.* at 219, 81 S.Ct. 1052 (citations omitted). Furthermore, "the tax law deals in economic realities, not legal abstractions," *C.I.R. v. Southwest Exploration Co.*, 350 U.S. 308, 315, 76 S.Ct. 395, 100 L.Ed. 347 (1956), and its "reach" should not "be delimited by technical refinements or mere formalism."

*U.S. v. Joliet & C.R. Co.*, 315 U.S. 44, 49, 62 S.Ct. 442, 86 L.Ed. 658 (1942) (citing *Helvering v. Clifford*, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940)). A further general principle of taxation is that "an individual should be taxed on any economic benefit conferred upon him, to the extent that the benefit has an ascertainable fair market value." The above quotes suggest, and the various cases demonstrate, that a taxpayer does not gain income *only* through his dominion and control over something; a taxpayer also realizes taxable income where he "obtains the fruition of the economic gain which has already accrued to him." *Comm'r v. Fender Sales, Inc.*, 338 F.2d 924, 928 (9th Cir.1964)).

In conformity with these principles, the Supreme Court has long held that "discharge by a third person of an obligation to [the taxpayer] is equivalent to receipt by the person taxed." *Old Colony Trust Co. v. Comm'r*, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918 (1929) (employer's payment of employee's taxes constitutes taxable income). "Income is not any the less taxable income of the taxpayer because by his command it is paid directly to another in performance of the taxpayer's obligation to that other." *Joliet & C.R. Co.*, 315 U.S. at 49, 62 S.Ct. 442 (quoting *Raybestos–Manhattan, Inc. v. U.S.*, 296 U.S. 60, 64, 56 S.Ct. 63, 80 L.Ed. 44 (1935)). Where a taxpayer's property interest, even one that was never in his control or possession, is used to satisfy his outstanding obligation to the Government, the corresponding reduction in the amount of that obligation constitutes an "economic benefit," and is taxable as income. *See Koehn v. Comer*, No. 97 Civ. 76328, 2003 WL 1735496, at *1 (E.D.Mich. Feb.19, 2003).

In this case, although the proceeds of Grand Carting's asset sale were never subject to the control of Grand Carting or

Carione, they *were* used to pay off the outstanding *Hickey* forfeiture obligations in August 2000. And that event clearly and undeniably marked the "fruition" of an "economic benefit" to Grand Carting and Carione. In light of these facts, and the above authority (controlling and persuasive), it cannot be the case that the sale of Grand Carting's assets was not taxable as "income" or "gain" for the 2000 financial year. Any other result would effectively allow a "deduction for the amount of the forfeiture—a deduction which has been denied on the ground that it would frustrate public policy." *Gambina v. Comm'r*, 91 T.C. 826, 828, 1988 WL 108300 (1988).[4]

C. *Because Grand Carting realized a taxable economic benefit in 2000, through the pass-through taxation rules applicable to S Corporations, Carione realized a taxable economic benefit in 2000 as well.*

 The Internal Revenue Code allows certain incorporated small businesses to elect to be taxed as "S corporations," allowing them to pass their earnings through to their owners, who must account for the corporations' financial results on their personal income tax returns. *See Oren v. C.I.R.*, 357 F.3d 854, 856 n. 1 (8th Cir.2004) (citing 26 U.S.C. §§ 1361, 1362, & 1366). The United States insists that since Grand Carting was an S corporation, the proceeds from its asset sale to WM passed through to Carione, the sole shareholder, as taxable income.

Carione readily admits that Grand Carting was an S Corporation and that he owned 100% of its shares. However, he argues that "the fact that the assets of Grand Carting were converted to cash should not cause pass-through income to Mr. Carione," because "the fact that the corporation is a Subchapter S corporation does not eliminate the distinction between the corporation and the individual." Carione cites *Ding v. Commissioner*, 200 F.3d 587 (9th Cir.1999) in support of this argument, but misreads the meaning of that case. In *Ding*, the taxpayers owned two money-losing S corporations, and were also self-employed in a number of other apparently profitable business ventures; the issue in that case was whether the taxpayers could apply the pass-through losses from their S corporations to offset their "net earnings from self-employment" in the other ventures. *Id.* at 587–88. The Ninth Circuit said no. As Carione notes, the court stressed that S corporations and their shareholders maintain separate tax identities. *Id.* at 589. However, it did so in the context of finding that an S corporation shareholder cannot deduct the S corporation's losses from his own personal income. *See generally id. Ding* does not suggest a refutation of the well-established rule that an S corporation's *earnings* are passed through to its shareholders, and that such earnings constitute taxable income once they are passed through.

4. As a side argument, Carione suggests that there is "no case holding that the forfeiture of property (as distinct from income earned in an illegal enterprise), standing alone, constitutes income to its former owner." Carione warns that "no public policy is implicated by taxing a person on income earned but later forfeited, [but] declaring the forfeiture itself to be a taxable event does raise the specter both of double jeopardy implications and of Eighth Amendment excessive punishment." However, in addition to being inadequately briefed,

this argument is facially invalid. Carione is not being taxed for forfeiting anything. He is being taxed on the economic benefit of *avoiding* having to pay a forfeiture judgment out of his own pocket. This is clearly warranted under applicable Supreme Court precedent. *See Old Colony Trust Co. v. Comm'r*, 279 U.S. 716, 730–31, 49 S.Ct. 499, 73 L.Ed. 918 (1929) (holding that payment of employee's income tax by employer is itself taxable form of income, and rejecting argument that result would create "a tax upon a tax.").

Grand Carting did, as Carione insists, maintain an identity separate from Carione's. But it did not maintain separate tax treatment. Upon applying its asset sale proceeds to pay off the outstanding *Hickey* forfeiture obligation in August 2000, Grand Carting received an economic benefit that constitutes taxable income; because of Grand Carting's S corporation status, that benefit passed through to Carione as taxable income.

### CONCLUSION

For all of the reasons above, the Court treats the United States's motion as one for summary judgment, and holds that: (1) the sale of Grand Carting's assets produced taxable income to Grand Carting, (2) and thus to Carione, but (3) only in August 2000, when such proceeds were released from escrow and used to satisfy the Plaintiff's prior forfeiture judgment. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART; Defendant's Motion for Summary Judgment is also GRANTED IN PART and DENIED IN PART. **SO ORDERED.**