Ainsley **STEWART**, Plaintiff,

v.

**TRANSPORT WORKERS UNION OF GREATER NEW YORK, LOCAL 100, Transport Workers Union of America, AFL–CIO, Defendant.**

**No. 06 Civ. 1743(RJS).**

United States District Court, S.D. New York.

June 17, 2008.

Louie Dimitrios Nikolaidis, Esq., Lewis Greenwald Clifton & Nikolaidis, P.C., New York, NY, for Plaintiff.

James Michael Reif, Esq., Gladstein Reif and Meginniss, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Plaintiff Ainsley Stewart brings this action against the Transport Workers Union of Greater New York, Local 100, Transport Workers Union of America, AFL–CIO ("Local 100"), seeking to recover allegedly unpaid wages. Specifically, plaintiff alleges that defendant failed to pay wages, including compensation for overtime, allegedly owed to plaintiff as a result of his service as an elected official of Local 100. Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA"), 29

1. Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no admissible evidence to controvert that fact.

2. Defendant has submitted a declaration from its counsel that contains factual assertions "in support of Local 100's motion." The Court

U.S.C § 201 *et seq.*, New York Labor Law § 190, *et seq.*, and New York common law.

Defendant now moves for judgment on the pleadings or, in the alternative, for summary judgment dismissing plaintiff's claims based on the doctrine of *res judicata*. For the following reasons, the Court construes defendant's motion as one for summary judgment and denies the motion in its entirety.

## I. BACKGROUND

### A. The Facts

The Court has taken the facts described below from the parties' respective Local Rule 56.1 statements of facts.[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50(2d Cir.2005).

### 1. *Stewart I*

In December 2003, Stewart was elected as one of seven Vice Presidents of Local 100. (Def's 56.1 ¶ 3.[2]) His term concluded in December 2006. (*Id.*) On January 11, 2005, Stewart and thirteen other members of Local 100 filed a lawsuit (*"Stewart I"*) asserting claims under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(1)(a)(2) and 411(1)(a)(5).[3] (*See Stewart I* Compl. ¶¶ 51–58.)

The *Stewart I* plaintiffs alleged that several officers of Local 100 and the union itself had "engaged in a concerted effort to undermine" plaintiffs' "rights to union democracy and freedom of speech" under the

refers to this declaration as Defendant's 56.1 Statement.

3. *Stewart I* was initially assigned to the Honorable Lewis A. Kaplan, District Judge, and was reassigned to the Honorable Paul A. Crotty, District Judge, on August 1, 2005.

LMRDA and to "negate the results" of the December 2003 election. (*Id.* at p. 1.) According to the *Stewart I* plaintiffs, defendants engaged in the alleged scheme because they were dissatisfied with the results of the December 2003 elections—wherein several of the plaintiffs, including Stewart, won elected positions in Local 100 and defeated "persons supported by the individual defendants." (*See Stewart I* Compl. at pp. 1–2.)

In ¶¶ 39–45 of the *Stewart I* Complaint, plaintiffs listed thirty-nine alleged acts that defendants took in furtherance of the purported scheme to infringe on plaintiffs' rights under the LMRDA.[4] These alleged acts included, *inter alia*, implementing various restrictions on the authority of Vice Presidents to manage their staff (*Id.* ¶ 39(b)), excluding Vice Presidents from meetings or decisions that they previously participated in (*see, e.g., id.* ¶¶ 39(c)-(e), (g), (m)-(n), 41(e)), ordering Local 100 staff to open Vice Presidents' mail, including correspondence from Stewart's attorney at the time (*id.* ¶¶ 39(h), 40(a)), distributing materials wherein defendants falsely disparaged certain plaintiffs (*id.* ¶¶ 40(b)-(c)), restricting Vice Presidents' ability to access documents "necessary" to the performance of their jobs (*id.* ¶ 41(a)), bringing "frivolous disciplinary charges" against one of the plaintiffs (*id.* ¶ 43(c)), "deferring action" on internal charges brought by plaintiffs against one of the defendants (*id.* ¶ 43(f)), and publically criticizing certain plaintiffs without grounds therefor (*id.* ¶ 45).

Among these various acts, plaintiffs also alleged that defendants engaged in the "[u]nwarranted withholding of Vice Presidents' paychecks." (*Id.* ¶ 39(1).) However, other than the one-sentence allegation in ¶ 39(1), the *Stewart I* complaint does not make any other reference to the alleged non-payment of wages to Stewart or any other plaintiffs.

In the call for relief in the *Stewart I* complaint, plaintiffs requested (1) injunctive relief to prevent defendants and others "from violating plaintiffs' rights of freedom of speech and assembly"; and (2) damages arising from the alleged violations of "plaintiffs' rights of freedom of speech and assembly." (*Stewart I* Compl., "Relief Requested")

On March 30, 2005, defendants filed an answer and a counterclaim against one of the *Stewart I* plaintiffs, Carl Spencer. (Defs.' 56.1 ¶ 6, Ex. B.) Thereafter, on May 6, 2005, the *Stewart I* plaintiffs served their first document request on Local 100's counsel. (*Id.* Ex. C.) The document request sought production of, *inter alia*, "[a]ll documents concerning the withholding of wages from plaintiffs from January 1, 2003 to present." (*Id.*) In response, Local 100 produced to plaintiffs 134 pages of documents pertaining to Local 100's alleged non-payment of wages to Vice Presidents; 82 pages of this production pertained specifically to Stewart. (*Id.* Ex. D.)

On July 28, 2005, a defendant in *Stewart I*, Roger Toussaint, the President of Local 100, sought leave to amend defendants' answer to add a counterclaim for defamation against Stewart. (*Id.* Ex. E.) On September 13, 2005, prior to ruling on Toussaint's application, Judge Crotty granted the parties' joint request to stay the case pending "ratification of a new collective bargaining agreement" between Local 100 and the entities that employ its members. (*See id.* ¶¶ 8–9, Ex. G.)

On January 19, 2006, during the pendency of the stay, Stewart's counsel sent a

---

4. Several of the alleged acts listed separately ¶¶ 39–45 in the *Stewart I* complaint are par-tially or entirely redundant.

letter (the "Paycheck Letter") to Local 100's counsel that stated, in its entirety: "Mr. Stewart informs [sic] that his most recent paycheck was one half of what he usually receives. Please provide me with an explanation." [5] (*Id.* ¶ 10, Ex. I; Pl's 56.1 ¶ 8.) In the Paycheck Letter, Stewart's counsel did not indicate his letter was connected to any claims or allegations raised in *Stewart I*. The subject line of the letter merely read "Re: Ainsley Stewart." (Defs.' 56.1 Ex. I.) Local 100 did not respond to the Paycheck Letter. (*Id.* ¶ 10.)

On March 6, 2006, while the stay in *Stewart I* remained in effect, Stewart commenced the instant action (*"Stewart II"*). The action was initially assigned to the Honorable Kenneth M. Karas, District Judge. The Court addresses the claims asserted in *Stewart II infra*.

Subsequently, on September 14, 2006, the *Stewart I* parties, including Stewart, appeared before Judge Crotty for a conference. There, the parties engaged in an extended discussion regarding the possibility of settling *Stewart I* prior to the Local 100 elections that were scheduled to take place in October 2006. (Sept. 14 Tr. at 3–4.) First, plaintiffs' counsel indicated that, if the parties' could "work out some agreement on some concerns of the plaintiffs relative to the election," it "would be a basis for resolving" the *Stewart I* litigation. (*Id.* at 4.) Defense counsel responded that he was "totally in the dark" as to plaintiffs' "concerns about the election . . . . They've not served a proposed amended complaint or even informally indicated in some way what their concerns are or what their objections are to the election." [6] (*Id.*)

Plaintiffs' counsel then outlined their "three concerns": (1) defendants' alleged

misuse of the union newspaper; (2) certain defendants' alleged use of MTA employees for union-related political activities; and (3) Toussaint's alleged practice of "dock[ing]" the pay of Vice Presidents, "particularly" Stewart's pay. (*Id.* at 6–7.) In response, defense counsel asserted that the alleged docking of pay "is the subject of a *separate* lawsuit already. . . . So I don't understand why Mr. Stewart is having his lawyer talk about it here where it's not even a subject of this lawsuit [and] it is the subject of another lawsuit . . . ." (*Id.* at 8–9 (emphasis added).)

Plaintiffs' counsel agreed with defense counsel's assertion that the claims for back wages were exclusively the subject of a separate action, and indicated that his only concern at that stage of the *Stewart I* litigation was to stop the alleged docking of pay from "this date forward ____." (*Id.* at 9.) Indeed, he specifically noted that plaintiffs were *"not* seeking back wages" in *Stewart I:* "Mr. Stewart has commenced a second action. I'm not familiar with its status. This action [*Stewart I* ] was on hold [when Stewart filed the second action] and we think that's a separate matter. But surely, between now and the election, we don't think there should be any more pay docking." (*Id.* (emphasis added).)

Next, defense counsel criticized plaintiffs for failing to raise these three concerns, including the "pay docking" issue, at an earlier time, and for not including such claims or factual allegations in a pleading in *Stewart I:*

> [I]t sounds like it's the plaintiff[s'] position that everything they have raised here is something that has been going on for some period of time . . . . So I don't quite understand why they've waited until now to start talking about it

---

5. Stewart's counsel in *Stewart I* wrote the Paycheck Letter. Stewart is represented by a different attorney in the instant action.

6. The same defense counsel represented the defendants in both *Stewart I* and *Stewart II.*

and, in fact, start talking about it without having sought to present a pleading to the Court that encompasses any one or more of these claims, with the exception of this separate lawsuit.... [I]t sounds to me like what the plaintiffs are suggesting is that the Court has some kind of roving commission to supervise election-related matters, even in the absence of any complaint having been filed that encompasses any of these claims. (*Id.* at 9–10.) The Court takes no position as to whether defense counsel was, as he now contends (*see* Argument Tr. at 42), simply mistaken in stating that the wage claims were not "encompasse[d]" by the *Stewart I* complaint or if he was instead joining in plaintiffs' counsel's position that the wage allegation in ¶ 39(1) was merely collateral to the claims asserted in *Stewart I* and, therefore, that the wage claim was not "encompasse[d]" by the *Stewart I* complaint.

In any event, at the close of the September 14 conference, Judge Crotty clarified, and the parties agreed, that plaintiffs' concerns were solely related to "future conduct" by defendants. (*Id.* at 10.) He also indicated that the parties should discuss these concerns outside of court in anticipation of settling the *Stewart I* litigation. (*Id.* at 10–11.) As such, defense counsel suggested that, in order to further the settlement negotiations, plaintiffs' counsel should "provide some more specifics" to defendants about plaintiffs' three concerns. (*Id.* at 11.)

Subsequently, on September 19, 2006, plaintiffs' counsel sent a letter to defense counsel that "set forth plaintiffs' proposal for resolving this litigation" (the "Settlement Letter"). (*Id.* Ex. K.) The Settlement Letter addressed each of the three concerns discussed at the September 14 conference. Specifically, in regard to the alleged non-payment of wages to plaintiffs, the Settlement Letter provided that "[t]he practice of ... taking deductions from payment of [union officers'] salary shall cease.... Deductions from a candidate's salary may seriously impede their capacity to seek and win election." (*Id.* at 2.) Moreover, while plaintiffs' counsel observed that "[t]hese issues are referenced in the complaint" and specifically cited, *inter alia,* ¶ 39(1), plaintiffs' counsel indicated in a footnote that "[t]he litigation before Judge Karas [*i.e., Stewart II*] seeks payment for salary already deducted. The proposal set forth here seeks to stop future deductions." (*Id.* at 2 n. 1.)

Ultimately, in November 2006, counsel for both parties in *Stewart I* signed a stipulation on behalf of their clients whereby (1) plaintiffs dismissed with prejudice "the complaint ... and each claim therein ..."; (2) Local 100 dismissed with prejudice its counterclaim against plaintiff Spencer, "provided that Local 100 shall retain the right to pursue any claim in state court against Spencer ..."; and (3) defendant Toussaint "waive[d] any claim for defamation ...." (*Id* Ex. L at 1–2.) On November 13, 2006, Judge Crotty signed the Stipulation. (*See id.*)

### 2. Stewart II

The instant action was brought by Stewart individually to recover for Local 100's alleged non-payment of wages to Stewart. Specifically, Stewart seeks to recover money damages, pursuant to FLSA and state law, for wages that Local 100 allegedly "docked" from his salary. (*See Stewart II* Compl. ¶ 16.) The factual allegations in the *Stewart II* complaint relate solely to Stewart's work, the collective bargaining agreement and statutes that allegedly governed his compensation, and defendants' alleged under-and non-payment of wages owed to Stewart. (*See id.* ¶¶ 7–17.) Other than the alleged withholding of wages owed to Stewart, the *Stewart II* complaint does not assert any claims or factual alle-

gations regarding defendants' misuse of union publications, their attempts to circumscribe the role of Local 100 Vice Presidents, and/or other facets of the purported scheme by the defendants in *Stewart I* to suppress the *Stewart I* plaintiffs' rights under the LMRDA.

On October 26, 2006, during the initial conference in *Stewart II* before Judge Karas, defense counsel—who also represented the *Stewart I* defendants—conveyed to the court and to Stewart's counsel—who did *not* represent the *Stewart I* plaintiffs—his view that the wage claims asserted in *Stewart II* had "also been made" in *Stewart I*. (*See* Defs.' 56.1 ¶ 4; Pls.' 56.1 ¶ 2.) However, it is undisputed that defense counsel neither made this assertion in any proceedings before Judge Crotty in the *Stewart I* litigation nor conveyed this view to plaintiffs' counsel in *Stewart I*. (*See* Argument Tr. at 44–45, 47.[7])

### B. Procedural History

On July 16, 2007, defendant filed its motion for judgment on the pleadings. On September 4, 2007, the case was reassigned from Judge Karas to the undersigned. On May 7, 2008, the Court heard oral argument regarding defendant's motion. Thereafter, on May 15, 2008, defendant submitted a supplemental brief in support of its motion. The Court afforded plaintiff the opportunity to submit his own supplemental brief, but he has elected not to do so.

### II. Standard of Review

### A. Conversion

█ As an initial matter, the Court converts defendant's motion to one for summary judgment. "A district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material 'outside the

pleadings' and that material is "not excluded by the court." *Sira v. Morton,* 380 F.3d 57, 66–67 (2d Cir.2004) (quoting Fed. R.Civ.P. 12(c)). Here, defendant has attached to its motion, *inter alia,* (1) the complaint in *Stewart I;* (2) the *Stewart I* defendants' answer thereto; (3) certain materials relating to discovery in *Stewart I;* (4) Toussaint's motion to amend his answer in *Stewart I;* (5) a number of orders issued by Judge Crotty in *Stewart I;* and (6) correspondence from Stewart's counsel in *Stewart I* to defendants and the Court in that action. (*See* Reif Decl. Exs. A–M.) In responding to defendant's motion, plaintiff has similarly attached a number of materials not referenced in or attached to the *Stewart II* complaint, including copies of correspondence from defendant's counsel in *Stewart I* and transcripts from several conferences before Judge Crotty in *Stewart I*. (*See* Nikolaidis Decl. Exs. 2–5.)

The *Stewart I* complaint does not incorporate any of the attached materials by reference, and several of them—namely, the discovery materials and the parties' correspondence—are not matters of public record of which the Court may take judicial notice or otherwise rely upon in resolving a Rule 12(c) motion. *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998). Thus, in order to consider these materials in resolving defendant's motion, the Court "must" convert defendant's motion to one for summary judgment. *See Sira,* 380 F.3d at 66.

Rule 12(c) provides that, when a court converts a motion for judgment on the pleadings into one for summary judgment, it shall provide "all parties . . . a reasonable opportunity to present all material made pertinent to such a motion." *Id.* at 68. "A party is deemed to have notice that

---

7. "Argument Tr." refers to the transcript of the oral argument regarding defendant's mo-

tion that took place before this Court on May 7, 2008.

a motion may be converted into one for summary judgment if that party "should reasonably have recognized the possibility" that such a conversion would occur." *Id.* (internal citation omitted). Here, plaintiff plainly had notice that defendant's motion could be converted and, in fact, responded to defendant's motion as if it were one for summary judgment.

Indeed, defendant's moving papers gave clear notice of the possibility that the motion would be converted to one for summary judgment. Defendant's notice of motion specifically stated that defendant was seeking summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Moreover, in its opening brief, defendant argued, at length, that the Court should consider its motion as one for summary judgment pursuant to Rule 56. (*See* Defs.' Mem. at 15–16.) Defendant also presented a statement of material facts in support of its motion that complied with Local Civil Rule 56.1 regarding "Statements of Material Facts on Motion for Summary Judgment." *See* Local Civil Rule 56.1.

Furthermore, plaintiff's opposition papers establish that he had notice that the motion might be converted to one for summary judgment. Specifically, in response to defendant's motion, plaintiff submitted a Local Civil Rule 56.1 counter-statement, wherein he specifically addressed each of defendant's factual assertions in its 56.1 statement and presented citations to evidence in support thereof (*see* PL's 56.1 Stmt.), as well as additional evidence in opposition to defendant's motion. (*See* Nikolaidis Decl. Exs. 2–5.)

Moreover, the record clearly demonstrates that plaintiff had a "reasonable opportunity to present all material . . . pertinent to" the summary judgment motion. *Sira*, 380 F.3d at 68. By order dated April 13, 2007, Judge Karas set a briefing schedule for defendant's motion and ordered defendants to produce "relevant discovery . . . to Plaintiff within two weeks of this Order." (Apr. 13, 2007 Order at 1.) Since that time, plaintiff has had an extensive opportunity to receive, to review, and to present arguments regarding such documentary evidence.[8]

■ Nevertheless, in a footnote in his opposition brief, plaintiff cites to Rule 56(f) and asserts that, "[g]iven the lack of discovery in this case (except for limited document production), summary judgment is [ ] inappropriate." (PL's Mem. at 11 n. 4.) However, plaintiff has failed to satisfy the standard set forth in Rule 56(f). The rule provides that, if a party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may deny the motion on that basis, or order other appropriate relief, such as additional discovery. *See* Fed.R.Civ.P. 56(f). Here, plaintiff has failed to present

---

8. The Court notes that, at this time, it appears that all such evidence relevant to the *res judicata* issue has, in fact, been produced by defendant and received by plaintiff. Although plaintiff's counsel indicated at oral argument that he would like to conduct some additional discovery—specifically, to depose both parties' counsel in *Stewart I* regarding their understanding of the claims asserted in that action—he also conceded that he failed to make a request to conduct additional discovery at any point prior to the date of the oral argument. Indeed, plaintiff's counsel conceded that he failed to make any such request at, or at any time since, the April 2007 conference before Judge Karas wherein the parties specifically addressed the discovery necessary to respond to defendant's motion on *res judicata* grounds. (*See* Argument Tr. at 53–55.) Accordingly, the Court finds that plaintiff's request to conduct additional discovery is untimely, and, in any event, that the Court is able to fully address defendant's motion without the deposition testimony of the counsel in *Stewart I*.

*any* "specified reasons"—by affidavit or otherwise—why he cannot, at this time, present facts essential to justify his opposition to defendant's motion, or to identify any additional discovery that is likely to reveal such facts.[9]

Therefore, because plaintiff has failed to identify any material shortcomings in the record regarding the *res judicata* defense, this Court, as part of its " 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings,' " accepts the materials outside the pleadings submitted by the parties and converts defendant's motion to one made under Rule 56(c). *Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005) (" '[T]his discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.' ") (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed.2004)); *see Sira,* 380 F.3d at 68.

## B. Summary Judgment

The standards for summary judgment are well settled. Pursuant to Rule 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment.

*See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## C. Res Judicata

 "To prove the affirmative defense [of *res judicata,* or claim preclusion,] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000); *accord Legnani v. Alitalia Linee Aeree Italiane, S.p.A.,* 400 F.3d 139, 141 (2d Cir.2005) (quoting *St. Pierre v. Dyer,* 208 F.3d 394, 399 (2d Cir. 2000)) (additional internal quotation marks and citation omitted); *see also Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 287 (2d Cir.2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for *res judicata* purposes.") (citing *Nemaizer v. Baker,* 793 F.2d 58, 60–61 (2d Cir.1986)). "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action." *Computer Assocs. Int'l, Inc. v.*

---

**9.** Indeed, during oral argument on the instant motion, defense counsel pointed out plaintiff's failure to submit an affidavit in accord with Rule 56(f); yet, following argument and up to the date of this decision, plaintiff still has not requested additional time to prepare such an affidavit or presented such a submission to the Court.

*Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997). In this case, plaintiff disputes whether defendant has satisfied the third factor.

■■■ In regard to that factor, the doctrine of *res judicata* bars a successive action only when it involves the same "nucleus of operative fact" as an earlier suit. *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir.2000). Thus, "[w]hether there is claim preclusion depends upon whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits . . . ." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir.2000); *see also Berlitz Sch. of Languages of Am., Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir. 1980) (finding that, "whatever legal theory is advanced" in the two suits, the claims are "deemed to be duplicative for purposes of *res judicata*" where "the factual predicate[s] upon which claims are based are *substantially identical* . . . ") (emphasis added).

■■■ "To determine whether two actions arise from the same transaction or claim, 'we look to [1] whether the underlying facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' "[10] *Marvel Characters,* 310 F.3d at 287 (quoting *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 38 (2d Cir.1992)) (internal citation omitted). However, "[a]pplication of *res judicata* principles is not a rigid exercise." *Jean–Gilles v. County of Rockland,* 463 F.Supp.2d 437, 454 (S.D.N.Y. 2006). In particular, "[t]he notion of a 'transaction' is prismatic in the sense that it takes coloration from its surroundings. It must be given a flexible, common-sense construction that recognizes the reality of

the situation." *Interoceanica Corp. v. Sound Pilots,* 107 F.3d 86, 91 (2d Cir. 1997). Thus, "to determine if a claim is barred [by *res judicata* ], the Restatement (Second) of Judgments recommends a 'pragmatic [ ]' approach." *Jean–Gilles v. County of Rockland,* 463 F.Supp.2d at 454 (internal citation omitted).

Finally, the Second Circuit has observed that " 'dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action.' " *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir.2007) (quoting *Sure–Snap Corp. v. State St. Bank & Trust Co.,* 948 F.2d 869, 874 (2d Cir.1991)). "Importantly, we have also cautioned that [i]ssue preclusion will apply only if it is *quite clear* that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *Id.* (internal quotation marks and citation omitted) (emphasis added).

### III. DISCUSSION

■■■ Defendant argues that plaintiff has improperly attempted to "avoid the effects of *res judicata* by splitting his claim into various suits, based on different legal theories," *Waldman,* 207 F.3d at 110 (internal quotation marks and citation omitted), and, therefore, plaintiff is barred from asserting claims for unpaid wages in this action. The Court disagrees.

As an initial matter, the Court notes that there is some overlap between the factual allegations asserted in the pleadings in the two actions. Specifically, in the *Stewart I* complaint, plaintiffs alleged that "defendants . . . embarked on a campaign to undermine the position[ ] of . . . Stew-

---

10. The three-prong "same transaction" test is derived from the Restatement, and has been specifically adopted by the Second Circuit.

*See Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

art" (*Stewart I* Compl. ¶ 37) by, *inter alia,* engaging in "unwarranted withholding of Vice Presidents' paychecks" (*id.* ¶ 39(1)) from approximately January 2004 to the date of filing, January 12, 2005. Similarly, in the *Stewart II* Complaint, Stewart alleges that Local 100 "failed to pay plaintiff" (*Stewart II* Compl. ¶ 18), and others "similarly situated" (*id.* ¶ 19), the wages to which they were allegedly entitled from approximately May 2004 to the date of filing, March 6, 2006, and that such violations were "willful." (*Id.* ¶ 27; *see id.* ¶¶ 18–27.)

However, notwithstanding the single sentence in ¶ 39(1) of the *Stewart I* Complaint regarding the alleged withholding of paychecks, defendant has failed to establish that these actions involve the "same transaction" for the purposes of the *res judicata* defense. First, the Court finds that treating them as a single "trial unit" would contradict "the parties' expectations" at or around the time they signed the Stipulation. *Marvel Characters,* 310 F.3d at 287. Second, the Court finds that the factual predicates underlying plaintiffs' respective claims in the two actions are *not* "substantially identical," *Berlitz,* 619 F.2d at 215. Finally, the Court finds that there is no basis to conclude that an independent judgment in this proceeding would impair or destroy any rights established by the judgment entered in *Stewart I.*

### A. The Parties' Expectations

In rejecting defendant's *res judicata* argument, the Court principally relies on the substantial evidence in the record indicating that the parties did not view the claims in the two actions as a single "trial unit," and that, during the course of litigating *Stewart I,* they explicitly urged the court and one another not to treat them as such. *See Marvel Characters,* 310 F.3d at 287. Indeed, the parties' conduct in litigating *Stewart I* indicates that they viewed the single reference to unpaid wages in the

*Stewart I* complaint as collateral to the claims asserted in that action.

The parties' conduct during the September 14, 2006 conference (the "September 14 conference") before the court in *Stewart I* provides ample support for this conclusion. As noted above, *Stewart I* was filed on January 11, 2005 and *Stewart II* was filed on March 6, 2006. Therefore, at the time of the September 14 conference, the two actions had been proceeding on parallel tracks for nearly six months. Thus, at the September 14 conference, both parties were aware of the pendency of *Stewart II* and of the wage claims asserted therein. Indeed, during the conference, the parties' counsel and the court devoted a substantial portion of their discussion to distinguishing the two actions. Specifically, during the September 14 conference, plaintiffs' counsel unambiguously indicated that the alleged practice of defendants "dock[ing]" pay from Local 100 Vice Presidents was not at issue in the *Stewart I* litigation, although it was a concern going forward. (*See* Sept. 14 Tr. at 9 ("[B]etween now and the election, we don't think there should be any more pay docking.").) Plaintiffs' counsel added that the plaintiffs in *Stewart I* were "not seeking back wages," but that Stewart individually had "commenced a second action ... that's a separate matter." (*Id.*)

Defense counsel joined in this view during the September 14 conference by stating that the alleged docking of pay was "the subject of a separate lawsuit already," and that, in his view, "it's not even a subject of this [*Stewart I* ] lawsuit ..." (*Id.* at 8–9.) Moreover, Judge Crotty, having heard the parties' representations at the September 14 conference, characterized plaintiffs' concerns regarding unpaid wages as solely related to defendants' possible "future conduct." (*Id.* at 10.)

Subsequent correspondence by plaintiffs' counsel reaffirmed the parties' shared viewpoint as to whether the non-payment of wages by defendants was at issue in *Stewart I*.[11] Specifically, in a letter dated September 19, 2006, plaintiffs' counsel noted that, while the unpaid wages issue had been "referenced" in the *Stewart I* complaint (Def's 56.1 Ex. K), those issues were the subject of "litigation before Judge Karas" (*i.e.*, the *Stewart II* case) and had been raised in *Stewart I* solely in order "to stop future deductions." (*Id.* at 1–2 n. 1.)

Following the September 19 letter, the record in *Stewart I* is silent, save for the Stipulation, and therefore offers no additional insight as to the parties' expectations regarding the treatment of the unpaid wages and the wage claims as a single trial unit. The Court is therefore left to resolve this issue on the basis of the evidence actually in the record, which strongly indicates that, notwithstanding the reference in the *Stewart I* complaint to unpaid wages, the parties did *not* view *Stewart I* as encompassing the alleged past non-payment of wages to Stewart and others.

In regard to this evidence, it appears that the May 6, 2005 document request, by which the *Stewart I* plaintiffs sought and obtained a sizable number of documents relating to the alleged non-payment of wages to Stewart and others, indicates that the *Stewart I* plaintiffs, at a minimum, viewed the unpaid wages issue as potentially relevant to the claims asserted in *Stewart I*. However, the Court finds that the other evidence discussed herein—including the *Stewart I* complaint, the parties' statements to the court, counsel's correspondence with one another, and the parties' litigation conduct—demonstrate

that the parties viewed the unpaid wages claims as arising from a distinct transaction that would be litigated in a separate action, and, therefore, was relevant to *Stewart I* only as background information or to the extent that plaintiffs sought to prevent future instances of pay "docking" by defendants.

Moreover, the fact that, during the October 26, 2006 conference before Judge Karas in *Stewart II*, defense counsel stated that Stewart's wage claims were present in both actions does not alter this Court's view as to the parties' expectations. There is no basis for this Court to conclude that, at the October 26 conference, defense counsel asserted this view as forcefully as he did the contrary view during the September 14 conference in *Stewart I* (indeed, there is no record or transcript of the October 26 conference). Indeed, according to defense counsel's own recollection of the October 26 conference, he did not specifically argue, or even raise, the issue of the *res judicata* bar at the conference; rather, he merely "pointed out on the record that the claim herein had also been made in a prior action . . . ." (Def's 56.1 ¶ 4.) In any event, it is undisputed that, both before and after the October 26 conference in *Stewart II*, defense counsel failed to make *any* attempt to relay the view he expressed at that conference to Judge Crotty or to plaintiffs' counsel in *Stewart I* prior to executing the stipulation, even where defense counsel had so strongly stated the contrary view only a few weeks earlier at the September 14 conference in *Stewart I*.

Therefore, drawing all reasonable inferences in plaintiffs favor, this Court concludes that the parties viewed Stewart's

**11.** The Paycheck Letter sent by Stewart's counsel during the pendency of *Stewart I,* but prior to the September 14 conference, offers absolutely no indication that the alleged non-

payment of wages to Stewart had any relation to the claims asserted in *Stewart I*. (*See* Defs.' 56.1 Ex. I.)

wage claims as part of a separate trial unit that was distinct from the transactions at issue in *Stewart II*, and considered the wage allegation in the *Stewart I* complaint to be background or circumstantial evidence of the alleged scheme at issue in *Stewart I*, rather than a factual allegation at the core of plaintiffs' claims under the LMRDA.

### B. Substantial Identity of the Underlying Facts

The Court further finds that the factual predicates underlying the claims in the two actions are not "substantially identical" for *res judicata* purposes. District courts evaluating similar cases—wherein some small number of facts and/or evidence was present in both of two otherwise distinct actions—have rejected the *res judicata* defense. For instance, in *Jean–Gilles v. County of Rockland*, the district court rejected the *res judicata* defense where the plaintiff had asserted in a prior action that the County of Rockland failed to promote plaintiff on the basis of his race and retaliated against plaintiff in violation of the First Amendment for his public opposition to racially discriminatory policies. 463 F.Supp.2d at 456–57. In the second action, the plaintiff sought injunctive relief from the County's allegedly unconstitutional policy of prohibiting county employees from speaking publicly on controversial matters. *Id.*

The court noted that, during the trial in the first action concerning plaintiffs race discrimination and First Amendment retaliation claims, several witnesses, including plaintiff, testified regarding the plaintiffs "public speech" and "activism," and one defense witness offered "evidence of a public policy that might constitute an unconstitutional prior restraint . . ." *See id.* at 455–56. Moreover, the verdict sheet specifically noted the jury's finding that " 'plaintiff's public speech was a substantial or motivating factor that prompted defendants not to promote him' . . ." *Id.* at 456 (quoting the verdict sheet).

Nevertheless, the court ruled that, although both parties presented some evidence in the trial of the first action regarding the County's allegedly unlawful speech policy, the "essence" of the plaintiff's claims in the first action differed significantly from that of the plaintiff's claims in the second action. *Id.* at 455. In so ruling, the court focused upon the disparate motives allegedly underlying the County's conduct, as well as the relatively minimal overlap between the alleged facts and the evidence in the two suits. *See id.* at 455–56; *see also Nat'l Ass'n of Pharm. Mfrs. v. Dept. of Health and Human Servs.*, 586 F.Supp. 740, 747 (S.D.N.Y.1984) (rejecting the *res judicata* defense where, "although the 'facts' and 'evidence' are in some sense the same as in [the first suit,] . . . the inquiry necessary to determine the merits of plaintiffs' current claims is nevertheless quite different").

Similarly, in the instant case, the Court finds that, despite a single overlapping factual allegation concerning the nonpayment of wages to Stewart, the "essence" of plaintiffs' claims in *Stewart I* differ significantly from that of plaintiff's claims in *Stewart II* The claims in *Stewart I* involved defendants' alleged scheme to undermine plaintiffs' role in the union leadership, to "negate the results" of the election in which several of the *Stewart I* plaintiffs obtained their positions, and to discourage or to limit plaintiffs' exercise of their rights under the LMRDA to "freedom of speech and assembly" and to be free from "improper disciplinary action." *See* 29 U.S.C. § 411; *Stewart I* Compl. at p. 1, ¶¶ 39–45.

Thus, in *Stewart I*, in order to recover damages for violations of the LMRDA, plaintiffs would have had to establish that (1) their conduct constituted "free speech"

under the LMRDA and was the reason the union took action against them, and/or (2) the allegedly improper disciplinary actions taken against plaintiffs "affect[ed] 'membership rights,'—such as the right to nominate candidates for office, to vote in union elections, to attend membership meetings, and to express views and opinions on union business." *See United States v. Int'l Brotherhood of Teamsters,* 156 F.3d 354, 361 (2d Cir.1998) (internal citations omitted); *Green v. Brigham,* No. 03 Civ. 5190(JG), 2005 WL 280327, at *9 (E.D.N.Y. Feb. 3, 2005). As such, the inquiry in *Stewart I* would necessarily have required an examination of facts well beyond the alleged nonpayment of wages to plaintiffs. Indeed, the LMRDA does not provide an independent cause of action for the nonpayment of wages. *See* 29 U.S.C. § 412. Accordingly, district courts have awarded damages for lost wages to plaintiffs in actions under the LMRDA only where such damages arose from a violation of one of the rights enumerated in § 411 of the LMRDA. *See id.* (providing for "appropriate" relief in an action brought by "[a]ny person whose rights ... have been infringed by any violation of this subchapter"); *see also Robins v. Schonfeld,* 326 F.Supp. 525, 531 (S.D.N.Y.1971) (awarding plaintiff lost wages where the defendant improperly disciplined plaintiff for exercising his free speech rights under the LMRDA, and noting that the "plaintiff's inability to secure work was proximately caused by defendant['s] ... illegal activity [under the LMRDA]"); *accord Pygatt v. Painters' Local No. 277,* 763 F.Supp. 1301, 1309 (D.N.J.1991).

By contrast, the claims in *Stewart II* exclusively involve defendant Local 100's alleged failure to pay plaintiff the wages owed to him under federal and state law. Thus, the inquiry necessitated by plaintiff's claims in *Stewart II* is far more narrowly confined: in order to establish his entitlement to damages for unpaid wages, plaintiff will have to demonstrate that Local 100 failed to pay him wages and overtime compensation at the level prescribed by FLSA, New York Labor Law, and/or the collective bargaining agreement at issue. Therefore, the Court cannot conclude that the "factual predicate[s] upon which [the] claims [in *Stewart I* and *Stewart II* ] are based are substantially identical ..." *Berlitz,* 619 F.2d at 215; *see also TM Patents, L.P. v. Int'l Bus. Machines Corp.,* 121 F.Supp.2d 349, 364 (S.D.N.Y.2000) (reviewing the course of "[t]he actual litigation" in the first action and concluding that, despite the presence of overlapping facts and issues, "[n]othing in that sequence of events suggests that I should find the 'identity of issues' prong of a res judicata analysis to be satisfied").

### C. The Effect of an Independent Judgment

Finally, the Court finds that "an independent judgment" in this proceeding would not "impair or destroy" any "rights or interest established by the judgment entered" in *Stewart I. McKithen,* 481 F.3d at 105 (internal citation omitted). The Stipulation executed by the parties in *Stewart I* did not specifically preserve or exterminate any rights or claims related to Stewart's unpaid wages claims. Thus, drawing all reasonable inferences in plaintiff's favor, and for the foregoing reasons, there is no basis to conclude that the Stipulation signed by Judge Crotty in *Stewart I* established any rights that would be "impair[ed] or destroy[ed]" by the resolution of Stewart's claims for unpaid wages.

\* \* \*

In sum, the Court finds that there is (1) substantial evidence indicating that the parties did not expect that these actions would form a single trial unit, (2) a lack of substantial identity of the facts underlying the two actions, and (3) no basis to conclude that an independent judgment in this

action would impair or destroy any rights established by the judgment entered in *Stewart I*. Therefore, given that, for the purposes of the "same transaction" inquiry, this Court must adopt "a flexible, common-sense construction that recognizes the reality of the situation," *Interoceanica Corp.*, 107 F.3d at 91, the Court finds that it is not "quite clear" that defendant has satisfied the requirements of the *res judicata* defense. *McKithen*, 481 F.3d at 105. Accordingly, the Court finds that plaintiff should not "be precluded from obtaining at least one full hearing on his [wage] claim[s]." *Id.* (internal quotation marks and citation omitted).

### D. Claims that Arose After the Filing of *Stewart I*

 The Court further finds that, even assuming *arguendo* that the above-cited factors weighed in favor of applying the *res judicata* bar to plaintiffs wage claims, plaintiff would not be prevented from asserting in this action any claims that arose after the filing date of *Stewart I*. Defendant argues that, in the event that the two actions concerned the same transactions, *res judicata* would also bar plaintiff from litigating any claims arising *after* the filing of *Stewart I*. (Def.'s Reply at 6–7; Def.'s Supp. Br. at 5.) However, defendant has failed to offer any persuasive basis to depart from the overwhelming weight of authority in this Circuit that sets the "crucial date" for the purposes of the *res judicata* bar as the filing date of the prior action. *Curtis*, 226 F.3d at 139; *see, e.g., Legnani*, 400 F.3d at 141; *Maharaj*, 128 F.3d at 96–97. Indeed, even the cases cited in defendant's brief directly support the proposition that "[t]he filing of the plaintiffs complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. 'New' claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir.2006) (internal citations omitted) (cited in Dft.'s Supp. Br. at 3); *see also Green v. Illinois Dept. of Transp.*, 609 F.Supp. 1021, 1026 (N.D.Ill.1985) ("Although Green could have sought leave to amend Green I to allege this claim which arose after that suit had been filed, we decline to read the doctrine of *res judicata* to require that Green should have amended his first complaint to add this claim") (cited in Dft.'s Supp. Br. at 3).

In the face of such authority, defendant makes much of the fact that the *Stewart I* plaintiffs sought *injunctive* relief, arguing that *Stewart I* therefore encompassed all claims that arose before, during and after the filing date of that action. However, the Supreme Court has squarely rejected this argument. In *Lawlor v. Nat'l Screen Serv. Corp.*, the Court held the *res judicata* bar did *not* apply and noted that this conclusion was "unaffected by the circumstance that the [first] complaint sought, in addition to treble damages, injunctive relief which, if granted, would have prevented the illegal acts now complained of [that occurred after the termination of the first action]. A combination of facts constituting two or more causes of action ... does not congeal into a single cause of action merely because equitable relief is also sought." *Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322, 328–29, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

Similarly, in this case, the claims arising after the filing date of *Stewart I* constitute a separate cause of action and, therefore, are not barred by *res judicata* notwithstanding the fact that plaintiffs sought injunctive relief in *Stewart I*. To hold otherwise would contradict clear Second Circuit authority indicating that "[c]laims arising subsequent to a prior action need not, and

often perhaps could not, have been brought in that prior action; accordingly, they are not barred by *res judicata* regardless of whether they are premised on facts representing a continuance of the same 'course of conduct' ...." *Storey,* 347 F.3d at 383 (quoting *Lawlor,* 349 U.S. at 327–28, 75 S.Ct. 865); *Legnani,* 400 F.3d at 142 (" '[P]laintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a *res judicata* bar when he alleges defendant's later conduct as a cause of action in a second suit") (citing *Maharaj,* 128 F.3d at 97); *Maharaj,* 128 F.3d at 97–98 (finding that "[b]ecause these claims arise out of ... an event that occurred after the filing of the complaint in [the first action] they are not barred by *res judicata*" ).

Therefore, even assuming *arguendo* that *res judicata* applied to the two actions at issue here, it would not bar plaintiff from asserting claims that arose after January 2005, which "need not ... have been brought in that prior action." *Storey,* 347 F.3d at 383.

### IV. Conclusion

For the foregoing reasons, the Court denies defendants' motion in its entirety. The parties shall contact the Court forthwith in order to schedule a status conference regarding the course of discovery in this action.

The Clerk of the Court is respectfully requested to terminate the motion docketed as document number 17.

SO ORDERED.